The next case will be 061442, Franklin Electric v. Dover Corp. The next case will be 061442, Franklin Electric v. Dover Corp. Thank you, Your Honors. May it please the Court. This is a patent case, and the issues are two. The first question is whether or not this claim term facilitate positioning requires a physical contact with the spill collector, as called for in the claim. And the second issue is, if it does not require this physical contact, does the District Court's grant of summary judgment of non-infringement need to be reversed in the case remanded to the Court? Now, the term facilitate positioning was interpreted by the District Court by going to the dictionary, and we also believe, and that, there was heavy emphasis on the dictionary meaning of facilitate, which the Court found to mean assist. And then a misreading, we believe, of Figure 7 in the patent as well as overlooking the specification. If we go back and we do what we consider a more proper interpretation of the term facilitate positioning, regardless of what we might come away with by looking at the dictionary, the context of the term facilitate positioning and the context of the invention as described in the specification and also in the prosecution history, we believe indicates that facilitate positioning, that term in the claim, does not require any physical contact between these tubular extensions and the spill collector. In fact... You concede that there's contact at the top where the O-ring is? Correct, in Figure 7 of the patent. Yes, and we also point out that the spill collector is shown in the body when the patent is tapered so that there is not contact or not necessarily contact with the lower... When you look at Figure 7, can you really tell? I mean, there's a little line that comes from 19, from the O-ring touches the side of the spill collector. What's that little line? Well, I don't believe there is... There's a line. You can see it. Look on page J825. Right? There is... There's a little line that comes over and touches the angle down the side of the spill collector on both sides. Number 19, extension 19. I think I understand. The line there, of course, is the upper extension has a top. It's an open top. Coming down through that open top of the upper extension 19 is a tapered end of the spill collector. Now, I think what we could do, if we gaze at this picture a little bit, we could imagine that the spill collector is passed in through the sump cover after the sump cover and the sump shield are assembled. For it to stop where it's shown in Figure 7, this O-ring seal 53 has to press fit against the upper end of the downward extension. What's the significance of the comment in the file history that in the prior art, the spill collector had to be cemented in the ground? I think that with the prior art, and there were a number of references there, but what they have in common is that they were indeed spill collectors positioned in tubular housings, but that was all there was to it. What comment about cemented in the ground? I think they were cementing the tubular housing in the ground. The spill collector no longer needs to be concreted into the ground. What did they mean by that? I believe this is what they mean. The invention was beyond the spill collector. What this invention was was something bigger than the spill collector. Why was the spill collector concreted in the ground in the past? The prior art that we saw had tubular housing that was concreted in the ground. To keep it from flopping around when it got filled up? Correct. To hold the tubular housing fixed, and the spill collector was attached to the riser, it could go up and down depending on temperature fluctuations. That was talked about in the prior art. The point here in this invention, and we've sort of lost that, I believe even down below, is that it was not about a spill collector. It was not about a spill collector being accommodated in a tubular housing. What this invention was all about was a containment assembly. Something bigger. They even used the word big on the previous page in the prosecution history. Something bigger than a spill collector. I agree with you on that. I think the reason why you got your rejection wasn't because you failed to facilitate positioning. You got your rejection because you weren't deemed to be sufficiently different from prior art. And you pointed out, yes, our structure is. Right. We have a sump. And I think one of the key limitations that were added to get around the prior art was the fact that we had the sump shield that then covered the sump opening and had a downward flange to it. So now this was something bigger than the spill collector. It had a sump cover. It had a frame. And it had a sump shield, all of which was going to accommodate a spill collector in it. And I think this word accommodate that I just used is more the sense of what was being talked about in the claim to facilitate positioning. Isn't it just your claim construction argument, sir, that what the trial judge did was to read facilitate positioning as if it said facilitate securing a spill collector there and locking it in? Correct. So you think facilitate positioning means providing the place to put it. That's correct. As opposed to facilitating latching it down or securing it. Correct, Your Honor. It's more what we're talking about, and I think you're saying the same thing, is we're providing a space where a spill collector can be placed because the invention is not the spill collector. It's not the positioning of the spill collector. The invention is this bigger sump. That may be true, but, I mean, if you had said in your claim to facilitate securing the spill collector therein, you'd be dead. That's right. Right? Even though that really wasn't your invention. It would have been an unfortunate selection of words from your perspective. That's right, although in this case we have other evidence in the internal record to guide us on what facilitate positioning means. In other words, positioning is not the same as securing. If that was at all suggested by Your Honor. Well, the word facilitate shows up in the written description at two or three places. Correct. And it showed up in the written description before the claim got the magic word facilitate tucked into it. Right, and facilitate is shown in the written description. It was talking about openings allowing access. It had this word of accommodating or allowing or permitting. Yeah, like being able to make the hole the nut in the hole and being able to get around it. Right, but it didn't require a securement. It didn't require a contact. It was just an opening. It was defining an opening, being there. And also in the prosecution history, when this term facilitate positioning was put in, the applicant remarked in describing the claim, I thought, insightfully or at least very indicative of what's going on here. He said, the claim now, Claim 1 now includes clarification of the sum cover as accepting a spill collector. It goes on to say about the sum shield, the top end of the sum shield, accepting a spill collector, this idea of accepting, this idea of accommodating. Did I misunderstand your adversary in argument in their brief to say that even if you prevail on your claim construction, facilitate positioning, doesn't require contact with the sides of the spill collector, there still is no literal infringement? That is their argument. And what is your response to that? Well, I suppose there's two responses. I think in our reply brief, our response was, well, it seems implicit in that kind of argument that you're still requiring some sort of physical contact. And if we get beyond that, then that was not what was passed on down below. That is, the court down below found that the water shroud boot, that is this outer what's called tubular housing surrounding the spill collector, made no contact with the spill collector, and therefore there was no infringement because it required securement or required this physical contact. The defendant now, OPW now, is saying, well, even if that was true, it doesn't require physical contact. The outer boot, this outer tubular housing boot, does nothing to assist positioning, does nothing to affect positioning of the spill collector, and therefore there can't be any infringement. Again, our point is that with a proper claim construction, you don't have this proactive sense of positioning. It's just accommodating. It has an opening accommodating. And indeed, the outer tubular housing, this water shroud boot, there's a lower extension coming off the cover, and there's an upper extension coming off the water shroud. I believe at page 24 of our main brief, this is probably the best pictorial of the accused device, it allows us to use terminology here. The claim calls for a sump shield. OPW has something called a water shroud, which has a part that fits over the sump opening and then is sort of L-shaped in cross-section. It comes across and goes up, and that upward side would be an upward extension. Between that upward extension of the water shroud and a top ring beneath the cover is what we call the water shroud boot, a bellows-type structure. And coming down from the cover is what the lower court referred to in its decision as a ring. It's sort of a bracket towards the upper end of the cover. You're not arguing for an order from us saying that there is literal infringement as a matter of law. Aren't you asking for a correction of an erroneous claim construction and a remand? Yes, Your Honor, because the district court in its decision indicated by a footnote that it made no, it's on JA-21, it made no finding whether or not these elements that I was just referring to now, this downward extension from the sump cover and upward extension of the water shroud were present. So it made no finding at this point. Mr. Ross, let me ask you this. It seemed to me that in the accused structure, this spill bucket is in place before the sump cover is put in place. In that sense, the spill bucket, it seemed to me, is positioned independently of the sump cover. And that is a point that OPW makes. But isn't that a valid statement? I don't believe it makes any difference when the spill bucket is placed in this assembly. Because again, the construction that we believe is proper is that facilitate positioning has to do with providing an opening that accommodates a spill bucket. But if the positioning is already accomplished before the cover is put in place, then the cover, it seems to me, plays no role, whether it's characterized as allowing or holding or anything else. The positioning takes place independently of the cover. And if that's true, then in what respect can the cover facilitate positioning since that's already done? Without using the word facilitate positioning, let me answer this way. I believe it accommodates it in the final sense, in the assembled sense. When the OPW system is assembled, it has the cover, sump cover. It has the water shroud. It has outer downward extensions, upward extensions. In that sense, when it's all put together with this water shroud, it is accomplishing what the invention was talking about and it's accomplishing what's called for in the claim. It is facilitating the positioning because it's there. If this were a process claim or a product by process claim, Judge Lynn's comment would be probably devastating, wouldn't it? That's correct. If we had steps that we had to follow, first comes this and then comes that, that's correct. But we just have to have a risk. Your argument is you've got a structured claim and it doesn't really make much difference which piece is put in place first. That's correct. I'm reserving some time for rebuttal. Mr. Scheller. Thank you, Your Honor. May it please the court, John Scheller, on behalf of OPW, Dover Corporation. Your Honor, the term facilitate positioning requires more than simply allowing access or accommodation or simply surrounding the spill collector. I'd like to talk about two items, the first being the construction of facilitate positioning and the second the non-infringement positioning. And with respect to the first item, there's several elements. All of our construction, OPW's construction, is based upon the intrinsic record here. And importantly... What's your best argument from the claim language itself that facilitate positioning actually means facilitate securing? Your Honor, the claim language that was added not only requires facilitate positioning but also requires that the holes of the downward and upward extensions be sized, shaped, and oriented to facilitate positioning. This is not a whole downward extension. But my point is it could be the size, shape, and contour creates the space into which you can drop something. That's the theory of your adversary. Or it could be a space in which you drop something and lock it in, so to speak. And that's your position. And that's the position of the district court. What I was asking is what's your strongest support from the claim language itself that facilitate positioning means facilitate, in essence, securing or locking, both creating the place and creating the lock? Your Honor, the problem with... You can be honest with me. There's really nothing in the claim language, right? Right. The problem with the claim language is that it was added during prosecution. And so prosecution history sheds more light on interpretation of the claims. And so the claims themselves, you really need to go... The claims weren't amended in order to put in the limitation facilitate positioning, right? Correct. That's not why the claims were amended. The claims were amended to overcome the rejection. And the patentee chose a route to overcome that rejection. And the patentee's choice was to add several amendments, a lot of language to the Claim 1. And that included the downward extension... Doesn't your case really turn on JA 369? Yes, Your Honor. The language that says, acts as containing and supporting and concreted? Yes, Your Honor. And that's the prosecution history of both 368 and 369. The entire context of 368 and 369 and the remarks of the amendment explain that the downward and upward extensions must do more than allow access. They must assist in positioning and supporting. Well, you can assist in positioning by creating the place to put it. You know, if I create a room, I have assisted in positioning things in the room. So that part of the analysis is a wash. It goes either way. It seems to me that supporting, that is to say, facilitating to facilitate the positioning, to get it in the place and then lock it down. I didn't see anything in the record other than 368, 369 that really supported your case. Is there anything else? 368, 369 is the best. But also, Your Honor, there is some reference in the specification to a mating that occurs between the downward-extending sleeves and the upward-extending sleeves. Nobody's arguing. The other side concedes that the two sides are there. They define the space. It's like you could have a room  and just had open space, like there's open space between those columns, but you can also then have walls. And so the adversary is saying, yeah, we agree, the upward and downward extension is made, and they create a space. And the pipe on the bottom that the thing's going to sit on in essence creates the floor. Your Honor, there was an important comment that was made in the prosecution history regarding the riser pipe and also about the point that it was, the prior art was concreted into the ground. Concrete into the ground shows that the prior art required firmness. There was a structure there that was holding the spill bucket in place. Well, but we don't know. I mean, I suppose that's, they could have dug a hole and not had the concrete, and that would be analogous to your adversary's construction of the claim? Well, my adversary's construction, I think that would be analogous to my adversary's construction, which is now allowing or accommodating, I guess, placement of the spill bucket. But when the patentee amended the language, the prosecution history not only talks about the language of the riser pipe, it also talks about supporting and containing spill collector. And the language of supporting and containing is the most... Containing? Yes. That is at page J369, Your Honor. It is the fifth line down, and it's the second full sentence. And it states, it acts as a housing for containing and supporting a spill collector. Well, containing is just, that's a place to put it. Right. But the housing and supporting, it acts as a housing for supporting a spill collector. And this language, and it was a part of the amendment, and it talks about Claim 1, and it talks about the containment assembly, and each sentence talks about the addition that is made and explains that there must be a support for the spill collector. Now, this is also a part of the concreting that occurred in the prior art. Patentee is saying, patentee stated on 369, J369, and what's the next sentence? After saying that it was a housing for containing and supporting, the next sentence states... Doesn't our precedent stand for the proposition that the first thing you do is you look at the claim language? Yes, Your Honor. And I think we've all agreed that the claim language doesn't result in a victory for you because it doesn't clearly say that facilitating a position means locking it down or facilitating containment or security. Facilitate position? So we look then to the specification, and there are several uses of the word facilitate in the spec, a couple of which are helpful to you, a couple of which are helpful to the other side. Then we look at the file history. Doesn't our precedent say if you're going to use the file history as the trump card, it's got to be pretty much clear and convincing? And actually, Your Honor, the... Yes, and actually, Your Honor, the... And you feel that A368, 368, 69 is just clear as a bell? I believe it is, Your Honor. Reasonable people couldn't debate what this means? No, Your Honor. And it's also, if you look at each sentence, I talk about the concrete and also a little bit about the pipe, the riser pipe. Well, the problem is the word it. It all comes down to these patent cases, a simple little word. It acts as a housing. The it refers to the invention as a whole, not to the little shape. Yes, Your Honor. When you read, I think, each sentence separately and together in context, you see what the it is referring to. And in fact, the prior sentence talks about, thus, the invention. The sentence before that talks about, thus, from the spill collectors. And it talks about the sump cover containment assembly. That's at the top of 369. And in its continuation, this is one paragraph that begins on 368 and continues to 369. And the whole paragraph has one subject heading, the amendment to Claim 1. And each sentence that follows, beginning with, Claim 1 is amended to include further clarifying and limiting language. The next one, Claim 1 now includes clarification of the sump cover as accepting a spill collector, both the upward and downward. And I think if you go through each sentence individually, Your Honor, and you read in context, when you get to the it, I don't think it's talking about the invention. It's talking about the housing. And the housing can only be the upward and downward extensions. And that's what the amendment was made to facilitate positioning language that was added. Well, that sentence then would have read the housing acts as, you know, containing and supporting. It says here, the prior sentence talks about thus the invention of Amendment Claim 1 is capable of much more. And the prior sentence before that talks about the sump cover containing an assembly. And so I think it's talking about the amendment to Claim 1. It's talking about the containment assembly. And I think that all these sentences here on 368... Maybe if reasonable people could dispute exactly how much specificity there is in these two pages, then there isn't a clear and convincing signal from the file history that you need to satisfy a legal test. Your Honor, even if you look to the plain and ordinary meaning of the term facilitate, it requires... And the district court did not look to a dictionary. The district court looked to the plain and ordinary meaning of the term facilitate. And that required to assist in positioning. And that assisting was accomplished by physical contact as depicted in Figure 7. Now, where in 7 do we actually see the bucket touching, except at the top or the O-ring, where in Figure 7 are we sure that there is contact between the upper lower and the bucket? Your Honor, I believe on Figure 7 the upward extension that comes up on the... If you look to line 19 or look to the bucket on the right side, the upward extension, which is labeled... Actually, it's not a number. Where is the... The wall of the bucket is angled, correct? It is, Your Honor. And so let's look at the very bottom of where the bucket's sitting on the pipe. Yes. On the left there, now move up. The upward extension, the 19 extension, if it's touching, it's touching because of little lines that are drawn over from the top of it, right? Yes, Your Honor. What are those lines? They're not structure because the structure of 19 has got two pieces to it. It's a... I put a magnifying glass on this, and there is a line that touches, but it's a single line. And the single line doesn't denote structure. But, Your Honor, what the patentee explained in the prosecution history is an important statement, and that is that this spill collector will still be supported even if the riser pipe fails. And that means that if the riser pipe fails in any regard, I think we have to consider that fail means... Where is that statement? That's on 369, Your Honor. It actually begins the last sentence of 368 and continues to 369. 368? Yes, the very last sentence. Thus, when the spill collectors... Of the patents, yes. Exactly, or the block... Fail. Because someone was a bit careless or the pipe connecting the spill collector and the gas tank fails, the sump cover containment assembly of the present invention prevents intrusion into the surrounding soil. In other words, Your Honor, if the riser pipe fails, if it breaks, the bucket spill collector will still be supported. There will not be any intrusion into the soil. But the only way to get intrusion into the soil would be if the bucket had a hole in it. But this talks about, Your Honor, if the pipe fails. In other words, in the prior assemblies, what the patentee, I believe, is saying, is that if the pipe failed... The pipe at the bottom of the sump? The pipe at the bottom... Bottom of the collector? Bottom of the collector. Because that's the pipe between... That's the riser pipe that goes from the spill collector to the gas tank. The tank down below. Well, what has contact with the sidewalls got to do with preventing intrusion in the surrounding soil by a leak in the bottom of the thing? What this is saying is that if... What this is saying is that there's a structure there that holds the spill bucket in place even if the pipe below it fails. That you don't need to have it concreted into ground anymore. You don't need to have it supported by a concrete. You now have a structure by the upward and downward extensions. And the patentee decided... Your Honor, I think the structures have to be on the bottom if that's where the pipes were. Is the answer to Judge Clevenger the fact that if you look at Figure 7 on the right-hand side, the spill bucket has tapered sides and that the tapered sidewalls as it sits in the housing there sort of midway down the side seem to be abutting against the top of the upward extension 19. In other words, you can't push the tapered bucket down anymore because it is abutting the top of that extension 19. Yes. Even if the fill tube 56 were eliminated or destroyed, the bucket couldn't go any lower because it's already running into the top of extensions 19. Yes, Your Honor. And there's the physical contact. Exactly. In addition, if we look to the... Excuse me. You could push the... If the pipe broke, you could push the collection bucket down halfway according to Judge Lin's analysis. No, because the... No, because the upward extension which extends out is on the inside of the downward extension would hold the bucket up. Well, that's assuming that it's actually touching the side there. Well, are you talking about the upward and downward extensions? Yes. The upward and downward extensions, Your Honor, according to the specification, mate. They're mated, but I agree with that, but they don't necessarily touch the side of the collection bucket. That's what's hard to tell from the drawing. Right. Well, Your Honor, I do think it does show contact. The bucket on the right-hand side does show contact. I think more clearly because you can see the tapered ends of the bucket. It does show contact between the tapered end and upward extension. I don't think that that's what the district court found. In fact, Franklin Electric has conceded that there's engagement between downwards. Engagement at the top, up at the overing. They admit that. Correct. Right. But that's not what the district court found. The district court found that there has to be touching down the sides of the upper and the lower extensions. I think that's a misreading of the district court's construction. I think the district court does not require touching along the entire surface. It only required physical contact. That's consistent with Figure 7. There's physical contact at the points where the upward and downward extensions contact. Well, there's physical contact in the accused device once you put the collar over it. There's no physical contact, Your Honor, between the optional water shroud boot and the bucket of OPW's configuration. OPW's... At the very top? At the very top. No, Your Honor. What happens is it's connected by an o-ring on the outer lip of the sump.  by a cover. And it does not... It's an optional... An important part about the OPW multi-port... I'm out of time, Your Honor. May I wrap up? Is that the end of the question, the answer? Yes, Your Honor. All right. Well, that's sufficient then. Thank you. Great. Thank you. Mr. Ross? I believe there are a number of reasons why facilitated positioning does not require physical contact, but if we could just address this Figure 7 for a moment. Okay. I think we will all agree, even without a magnifying glass, that on the left-hand side of Figure 7, the tapered midway part of the bucket is not touching the upward extension. Now, if... And I think that Judge Lynn was focusing on the right-hand side of that bucket where it looked like there is contact. But that's only because we have not been able to draw a bucket in a housing canted like this, that it's touched on one side and not on another. What that would do is when you drop the bucket down through this tubular opening formed by the downward extension and upward extension, you would get the bucket, and this is not going to be in my hands, but you would get the bucket sort of canted and that's not how they're designing it. Well, that's interesting. I was not looking at the... I was looking at the right side of figure seven, which is the only side that shows a bucket, correct? Correct. And it seems to me both sides of the bucket are touching the top of extensions 19. And if it's not shown, it just seems to me to be the only conclusion you can draw, much like you would have a tapered Dixie Cup that fit into a plastic holder. Midway down the sides of the cup, there is contact with the holder, and you can't push that cup down anymore because it hits the holder. It seems to me that's exactly what's going on here. You've got a tapered bucket that fits inside this upper extension 19, and it gets to a certain point it can't go any further. It's due to the contact at the top between the outer ring, which is the wider... There's nothing at the top. The O-ring would slide down the... The O-ring, this is not unusual. The O-ring is a little bit wider than the inner diameter of that upper extension, the downward extension of the upper part of the tubular housing. And so what is not   when the O-ring slides into the bucket, it compresses and forms a press fit, and eventually the pressure is just held there. It is like the Dixie Cup in the holder. All right. Thank you very much. The case is submitted.